## ASSIGNED ESTATE OF JAMES R. MOSS.

APPEAL BY J. L. CROW AND JAMES KUNTZ, JR., FROM THE COURT OF COMMON PLEAS OF WASHINGTON COUNTY.

Argued October 22, 1890—Decided January 5, 1891.
[To be reported.]

1. When two funds arising from property of the same debtor are for distribution, and a prior encumbrancer has recourse as such to both funds, a junior encumbrancer having a lien on but one of them, which is insufficient to pay both creditors, the prior creditor shall first exhaust that to which the other cannot resort.

2. This rule applies to a case in which one of the funds, that on which the junior encumbrancer has no lien, is the proceeds of property in another state, when such proceeds have been brought into this state by the debtor's assignee for the benefit of creditors, for distribution under the deed of assignment.

(a) A resident of Pennsylvania, owning land in that state and also in West Virginia, made an assignment of his entire estate for the benefit of his creditors. His personal estate had been exhausted by executions levied thereon, and the land in Pennsylvania was encumbered by judgments in excess of its value.

(b) The West Virginia land was encumbered by three deeds of trust, the second and third being in favor of the assignee, as collateral security for certain of the Pennsylvania judgments held by him. That land was sold under the first deed of trust, not realizing enough, however, to pay the second deed of trust in full.

(c) In addition to the proceeds of the Pennsylvania land, the assignee charged himself in his account with the entire proceeds of the West Virginia land, taking credit for the disbursement thereof to the holder of the first deed of trust and to himself as the trustee named in the other deeds of trust:

3. Upon distribution of the assigned estate, the Pennsylvania court had jurisdiction to require the application of the money, realized upon the second deed of trust, to the judgments for which it was security, so as to protect subsequent encumbrancers having liens upon the Pennsylvania land only.

4. The equity of the subsequent encumbrancers to have such an application made, was not affected by the facts that the assignee had guaranteed a judgment posterior to theirs, and that the circumstances were such that a different application would save him from loss by reason of his guaranty.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

Statement of Facts.

No. 160 October Term 1890, Sup. Ct.; court below, No. 28 February Term 1889, C. P.

On November 3, 1888, James R. Moss and wife, residing in Washington Co., Pa., executed and delivered to James Kuntz, Jr., a deed of assignment conveying all the property real and personal of James R. Moss, in trust for the benefit of his creditors. The assigned property consisted of personalty in Washington county, real estate in the same county, and real estate in Ohio county, West Va.

At the date of the assignment all these properties were subject to liens. The personalty was subject to the lien of certain executions levied thereon. The plaintiffs in those executions agreed to permit the personal property to be sold by the assignee, instead of by the sheriff, the proceeds of such sale to be applied to the payment of the executions in the order of priority. The assignee thereupon took possession of the personal property and sold it, realizing less than the amount required to satisfy the first execution.

The lands in Washington county were encumbered by various judgments against the assignor, entered in said county before the assignment; and the West Virginia land was encumbered by three deeds of trust, executed by the assignor and wife, and of record in Ohio county. The first deed of trust was in favor of S. Welty, securing the payment of $6,000. The second and third were dated October 8, 1888, and November 2, 1888, respectively, and were made to James Kuntz, Jr. That of October 8th was stated upon its face to be given " in trust and as collateral security to the extent of $5,000, for the payment of any loans now made, or that may hereafter be made, to the said James R. Moss, by the said James Kuntz, Jr., for himself, or as agent for others, or as agent for himself and others." The loans thus secured were secured also by certain of the judgments entered in Washington county. The trust deed of November 2d was made " in trust to secure the said James Kuntz, Jr., in the sum of $3,500, advanced by him to pay executions against the said James R. Moss now in the hands of the sheriff of Washington county, Pa., issued from judgments Nos. . . . . . ,"—giving the numbers and terms of three judgments.

### Statement of Facts.

At the date of the second deed of trust, Kuntz had not actually made the advances therein referred to, but it was intended that he should do so for the purpose of getting rid of the executions, so that the personalty levied on might be sold under the deed of assignment, which was to be and was made the next day. Six days after the assignment was made, he secured the stay of one of the executions, without advancing any money under the arrangement above stated. On the same day, having paid off another of the executions, he received an assignment of the judgment upon which it issued, and the third execution, F. M. Henderson, for use of J. L. Crow, was stayed by the plaintiff therein, in consideration of a guaranty by Kuntz of payment of the judgment. The date of the guaranty and whether it was in writing or not, did not appear except as a matter of inference from the facts stated. The judgment so guaranteed was at the foot of the list of liens entered in Washington county.

The Washington county lands were sold by the assignee under an order of the Court of Common Pleas, discharged from liens; the proceeds of the sales being insufficient to pay the liens. The West Virginia land was sold for $10,810, in proceedings under the deed of trust in favor of Welty.

In his account the assignee charged himself with the proceeds of the personal estate, $1,487.03; the proceeds of the Washington county lands, $12,118.05; and the entire proceeds of the sale of the West Virginia land, $10,810. He then took credit for various expenses and counsel fees, for $700 allowance to accountant, and for the amount of the proceeds of the West Virginia land. The last mentioned subject of credit was itemized, the accountant taking credit separately for the expenses of the sale under the Welty deed of trust; for the payment of taxes due upon the land sold; for the payment to Welty of the sum due him upon his deed of trust; and for the payment of the remainder of the proceeds of sale to the accountant himself, as follows:

" To James Kuntz, Jr., on two deeds of trust for $5,000 and $3,500, respectively, on West Virginia realty, collateral on certain judgments of the said Kuntz in Washington county, Pa., against the said assignor, J. R. Moss, subject to credit in favor of the estate of whatever surplus remains after payment of said judgments on distribution,     .     .     . $3,787 60."

### Auditor's Report.

The balance exhibited by the account was $12,084.61. That sum the auditor distributed by awarding so much thereof as represented the proceeds of the personal estate, to the first of the executions which were liens upon the personalty at the date of the assignment, and awarding the remainder, as proceeds of the Washington county lands, to the judgment liens in the order of priority, without crediting on the judgments which were secured by the deeds of trust, the moneys realized by Kuntz from the sale of the West Virginia land. This distribution left unpaid a part of a judgment held by John Brownlee, executor of E. Brownlee, deceased and other judgments subsequent thereto, including the judgment of F. M. Henderson, for use of J. L. Crow, guaranteed by Kuntz.

Exceptions having been filed to the report of the auditor, it was referred back to him by the court that he might pass upon certain questions raised thereby. One of those questions was as to whether, the loans made by James Kuntz, Jr., for himself and as agent of others, being doubly secured, by the deeds of trust as well as by the Washington county judgments, the amount of the West Va. fund received by Kuntz should not have been applied to the judgments secured by the deeds of trust, instead of paying such judgments out of the Washington county fund, to the prejudice of the judgment creditors who had liens only upon the lands in Washington county.

This question, the auditor, *Mr. John D. Braden*, in his second report, discussed as follows:

These exceptions are based upon the general doctrine in equity, that where one lien creditor has two funds to resort to, to secure payment of his claim, and another lien creditor of the same debtor has but one fund upon which he can go, the first shall take his payment out of the fund upon which the other cannot resort, so that both may be paid. There is no question about this general equitable doctrine, but it is not of universal application, and can only be enforced in certain cases which we will endeavor to explain hereafter. The auditor is of the opinion, however, that the doctrine is not applicable to the present distribution. . . . . These trust deeds are specific and comprehensive, in their terms, enough to secure Mr. Kuntz in all the judgments which he holds against the said James R. Moss in

Auditor's Report.

Washington county, and also for all money which he paid on the judgments specified in the second deed to the extent of $3,500. Now, whilst Mr. Kuntz, by his activity and vigilance, procured the above securities to protect himself and the parties for whom he loaned money to James R. Moss, the other lien creditors, amongst whom are exceptants, relied upon their judgment liens entered against said Moss in Washington county. We are unable to see that the exceptants have any lien, or claim, either in law or equity, upon the money arising from the sale of the three hundred acres held by Kuntz, by his deeds of trust, to protect himself and the others named in said deeds; except, of course, the claim which they have to participate in the fund left in the hands of the assignee, after the liens protected by the said deeds of trust have been satisfied, along with the other creditors of said Moss.

The claim made by the exceptants, on the general doctrine of equity referred to, in the opinion of the auditor is not applicable to the present distribution for another reason. That doctrine only applies, we submit, when the liens are against the same debtor, against the same property, and within the same jurisdiction. The auditor admits that the question is not without doubt, in our state, and the authorities which bear on the question not numerous, as far as he has been able to find. The case of Smith's App., 2 Pa. 331, decides "that A, who held collaterals in trust for an execution creditor and was also assignee of the debtor, and who had received money on the collaterals, could not be compelled by a subsequent execution creditor to pay the money thus received on the collaterals to him, but that the assignee may retain it for the general creditors, subject to the obligation to satisfy any deficiency under the executions." And the case of McGinnis's App., 16 Pa. 445, as we understand it, decides that the doctrine contended for by exceptants will not apply, where the liens, although against the same debtor, are on different property of the debtor, not being in the same county. If this is so, much less, we suppose, would it apply where the estate, which is the subject of the liens, is situated in different states.

The principle invoked by the exceptants will only be enforced where no injury will be done to the party holding the double security, or to any other creditor of the common debtor. It does

### Auditor's Report.

seem to your auditor that the claim made in the present case would work injustice to the unsecured creditors of the said James R. Moss. The rule seems to be that it will not be enforced in any case where the equity of the party seeking it is no stronger than the equity of the party affected by it. What lien have these exceptants on the fund raised on the sale of the Moss real estate in West Virginia? Or, what equity have they which is not common to all the unsecured and unpaid creditors of James R. Moss? Knouf's App., 91 Pa. 78; Lloyd v. Galbraith, 32 Pa. 110; Fessler's App., 82 Pa. 150.

The auditor . . . . . decides that the money now in the hands of the assignee, arising from the sale of the West Va. land of James R. Moss, paid to said assignee upon his two trust deeds from James R. Moss and wife, is properly applied to the judgments of said James Kuntz, Jr., against said Moss, in his own right, and also to those judgments which are mentioned in said deeds of trust, belonging to the parties for whom said Kuntz, Jr., loaned money to the said Moss, all of which are entered of record in Washington county, to a sufficient amount to pay any balance of debt and interest thereon, not reached by the sale of the Washington county land of said Moss. And whatever may be left, if anything, after the above payments, and after the costs of this audit, your auditor finds to belong to the general creditors of said James R. Moss, under the deed of assignment, pro rata with the unpaid lien creditors of said Moss, and a schedule of payment in accordance with this finding will be made out by your auditor, and attached to this report. . . . .

—The auditor thereupon appended to this report a schedule distributing the balance of $12,084.61 shown by the account, after deducting costs of audit, according to the same method adopted in his first report; with a second schedule first applying the West Va. fund* to such judgments, protected by the deeds of trusts, as were not reached by the proceeds of the Washington county lands, and then distributing the remainder of said fund among the unsecured creditors pro rata.

---

*It appeared that this fund was paid to the assignee in interest-bearing notes, and that interest had accrued thereon which, at the time the second report of the auditor was made, brought the amount up to $3,989.91.

Exceptions to the second report were filed by John Brownlee, executor of E. Brownlee, deceased, whose judgment was not protected by either of the deeds of trust and was not paid in full by the distribution.. These exceptions were sustained by the court, McILVAINE, P. J., in an opinion in part as follows:

The personal estate and the real estate in Washington county were sold by the assignee. The real estate in West Virginia was sold by a creditor who lived in that state and held a deed of trust therefor which was prior in date to both of those held by Mr. Kuntz. [Of the purchase money of this land, the assignee received $3,786 in notes, the balance after paying the West Virginia trustee, and it is now for distribution with the fund realized from the Washington county property.] [1] . . . . .

The testimony also shows that there were a number of unsecured creditors, and that the amounts of the judgments entered in Washington county, and just given, aggregate in all, to about $300 more than the net amount for distribution.

[The auditor, in his manner of marshaling the assets and making distribution pro rata, finds that this shortage should fall pro rata upon the unsecured creditors and Brownlee and Henderson, the two judgment creditors not included in either of the deeds of trust. In this the exceptant claims there is error, and we think the claim well founded. In our opinion the unsecured creditors are entitled to nothing. The whole fund is covered by liens, as the entire estate of the assignor, when he made his assignment, was covered with liens to and beyond its full value, and the shortage should fall on the creditors whose liens were last entered.] [2]

[Most of the judgment creditors who had liens on the Washington county land prior to Brownlee and (John) Henderson, also had a claim, by virtue of the first Kuntz deed of trust, on the $3,989.91 realized from the sale of the West Virginia land. They had two funds out of which to be paid, while Brownlee and Henderson had but one; and equity, in such a case, requires the doubly secured creditors to be paid so as not to disappoint the singly secured creditors. The party for whose protection the second deed of trust was executed cannot complain of this, because the West Virginia land did not sell for enough to pay the claims covered by the first Kuntz deed of trust, and the judgment creditors Brownlee and Henderson,

had an inchoate right to have the doubly secured creditors paid
out of this fund, before the second deed of trust given to Mr.
Kuntz for his protection. Their equity, so to speak, having
vested, and the assignor's whole estate being pledged for all it
was worth, the second deed of trust, when given, was really
worthless as a security to Mr. Kuntz, who, in order that the
assignment might be consummated, guaranteed the payment
of some of the existing liens.] [3]   When Mr. Kuntz made his
contract of guaranty, he assumed the risk of the property sell-
ing for enough to pay all the liens, one of the three being last
on the list.

But it is argued in his behalf that the West Virginia money
was received by James Kuntz, Jr., as the trustee named in the
deeds of trust and not as assignee, and that he has a right to
appropriate this money to the least secured creditors under the
two deeds of trust, or, in other words, as most benefits himself,
regardless of how it may affect the other creditors of the as-
signor, and that this fund of $3,989.91 is not really in the con-
trol of this court for distribution. An examination of the deed
of assignment and of the assignee's account will show that this
position is untenable. The assignor conveyed by specific de-
scription the West Virginia land to the assignee, and he ac-
cepted the trust. His account shows that he has charged
himself with $10,810, the amount for which this land sold; he
took credit for the disbursement of part of the money to the
West Virginia creditor who had the first deed of trust, and he
is allowed about $250 commissions as assignee for receiving and
paying out this money, as his percentage, amounting to $700,
is evidently computed on the amount of the debtor side of the
account, which includes this $10,810. It would be strange if
the assignee was allowed his $250 commissions on this fund in
his account, and the fund not subject to the control of the
court in its distribution. . . . .

A decree of distribution was then entered awarding the fund
from personalty as it was awarded by the auditor; applying the
West Va. fund to the judgments secured by the second deed
of trust (the first deed held by Kuntz), and awarding the fund
from the land in Washington county to the other judgments
in the order of priority.[6] This distribution paid in full the

judgments of Brownlee's executor and John Henderson, and left unpaid a part of the judgment guaranteed by Kuntz.

Thereupon J. L. Crow, the holder of the guaranteed judgment, and James Kuntz, Jr., took this appeal, specifying that the court erred inter alia:

1–3. In the conclusions embraced in [ ] 1 to 3

4. In the application to the Henderson judgment of the rule of substitution applied to the Brownlee judgment.

6. In the decree of distribution.[6]

*Mr. Albert S. Sprowls* (with him *Mr. J. M. Braden*), for the appellants:

1. The general equitable doctrine, which the court below laid down, is correct, but in practice it is not adopted when it would work the doubly secured creditor any injury: Bruner's App., 7 W. & S. 269. We object to its application in this case; first, because it would work injustice and loss to Mr. Kuntz, and second, because it would work unmerited injustice to the general creditors. If Kuntz be compelled to apply the money to be received by him from the proceeds of the land in West Virginia, to the judgments secured by his first deed of trust, before being permitted to participate in the distribution of the fund arising from the sale of the realty in Washington county, it is manifest that the judgments, to secure which the second deed of trust held by him was taken, will not be paid in full, and that by the guaranty which he gave for the benefit of the assigned estate and the creditors he will be exposed to loss. Consequently, it would be inequitable to grant the relief asked for by the appellees.

2. Again; the assignee did not sell the land in West Virginia, but it was sold under a deed of trust prior in lien to either of his deeds. The trustee who made the sale was not subject to the control or jurisdiction of the court below, but to that of the courts of Ohio county, West Virginia, and the deeds of trust held by Mr. Kuntz are under the control of those courts: Wharton, Confl. of Laws, § 291; Goddard v. Sawyer, 9 Allen 78; Lewis v. Barry, 72 Pa. 18. If Kuntz made an improper application of any portion of the proceeds obtained under his deeds, relief must be sought in Ohio county, and not here: McGinnis's App., 16 Pa. 445; Miller v. Jacobs, 3 W. 477;

Arguments.

Lloyd v. Galbraith, 32 Pa. 103; Gring's App., 89 Pa. 336. And it will not do to say that he has brought the West Virginia fund into the court below for distribution. The balance of his account, as confirmed, included no portion of it, and we assert that even yet in no capacity has he received any part of it. The inference drawn by the court below from the amount of the accountant's commissions, is erroneous and unwarranted.

3. But, suppose, for the sake of argument only, that the fund were brought into the court below for distribution. It would not, against the wish and demand of Mr. Kuntz, be applied in the manner contended for by the appellees, but Kuntz would have the right to make use of any or all his securities, if necessary, to procure satisfaction of his claim: 2 Lead. Cas. in Eq., 4th Am. ed., 257, 258, Am. note; Morris v. Olwine, 22 Pa. 441; Miller's App., 35 Pa. 481; Miller's Est., 82 Pa. 113; Wall's App., 84 Pa. 101; Mason's App., 89 Pa. 402. In case the decree of the court is affirmed, not only will the Brownlee judgment be satisfied, but that of John Henderson, who filed no exception to the auditor's report, will be paid in full also. This is a strange application of the rule that it is the active and vigilant creditor, if any, who shall be favored. Neither Brownlee nor Henderson made any attempt to secure a lien upon the real estate in West Virginia, and they had no claim against it that was not equally available to any of the assignor's creditors who were totally unsecured.

*Mr. R. W. Irwin* (with him *Mr. J. F. Taylor, Mr. E. E. Crumrine* and *Mr. Boyd Crumrine*), for the appellees:

1. It is difficult to see how the fact, that the fund realized from the sale of the land in West Virginia is within the jurisdiction of the court, can be seriously questioned. The assignee charges himself with it in his account and takes credit for the disbursement of it, including the payment of $3,787.60 to himself on his deeds of trust. No exceptions to the distribution of this fund by the auditor were filed by either of the appellants, and they cannot now be permitted to raise objections which were not raised in the court below. The confirmation of his account was an adjudication that James Kuntz, Jr., had the money, and he cannot be permitted now to deny it: Ducommun's App., 17 Pa. 270; Wilson's App., 115 Pa. 95. He

is within the jurisdiction of the court; and, whether he holds the money as assignee, or as trustee under the deed of trust, a court of equity has a right to say how it shall be applied.

2. The case is clearly within the rule that when one creditor has a lien on two funds, and a junior creditor has a lien upon but one of them, and both funds are before the court for distribution, the fund on which there is but one lien will first be applied so as to protect the junior creditor who has a lien only upon the other fund: Alston v. Munford, 1 Brock. 266; Delaware etc. Canal Co.'s App., 38 Pa. 516; Ramsey's App., 2 W. 228; Hastings' Case, 10 W. 303; Lloyd v. Galbraith, 32 Pa. 103. Even if the two funds were not within the same jurisdiction, the same equitable principle would apply: McDevitt's App., 70 Pa. 373; Y. & J. Steamboat Co. v. Jersey Co., 1 Hopk. 461; Hays v. Ward, 4 Johns. Ch. 123. That Kuntz obtained his collateral security after the lien of Brownlee's judgment attached, does not matter: Hastings' Case, 10 W. 303; DePeyster v. Wildreth, 2 Barb. Ch. 109.

3. It is contended, however, that this principle will not apply, because Kuntz, having guaranteed payment of Crow's judgment, which is not paid in full, would be the loser by reason of its application. Admitting that subrogation will not be permitted when it would affect intervening rights, it is equally clear that when the right to subrogation has once vested, it cannot be defeated by the paramount encumbrancer, especially by an act on his part which reverses the equities of judgment creditors. Brownlee, having a prior lien, had a superior equity to Crow. The moment Kuntz received his deed of trust as collateral security for his judgments, the right vested in Brownlee to insist that the proceeds of the collateral, when received, should be applied to those judgments, and Kuntz could not defeat that right by guaranteeing Crow's judgment: Hastings' Case, 10 W. 303; 2 Lead. Cas. Eq., 269. Moreover, he does not show that the guaranty was in writing so as to bind him, or that it preceded the assignment. A guaranty after the assignment could not affect the relative rights of the creditors, as they were fixed at its date.

OPINION, MR. JUSTICE GREEN:

The deed of assignment for the benefit of creditors from

Moss and wife to Kuntz embraced, as it should have done, the land of the assignor in West Virginia, as well as his other real and personal estate in Pennsylvania, where he dwelt. The personal estate of the assignor was all exhausted by executions issued prior to the assignment. The entire fund for distribution is the product exclusively of the sales of real estate, part in West Virginia and part in Washington county, Pa. The liens in West Virginia, entered prior to the assignment, were more than enough to exhaust the whole proceeds of the land sold there. Indeed, the proceeds of the West Virginia land were only enough to pay the first deed of trust in full, and the second deed of trust in part. The third deed of trust was not reached at all, and hence the judgments, which, being entered in Pennsylvania, were the subjects of the trust, received no protection from the sales of the West Virginia land. The judgment of the appellant was one of these. The sales in Pennsylvania did not reach to pay the liens entered in that state, even after the application of all the West Virginia proceeds to the payment of the judgments, also entered in Pennsylvania, but which were secured by the second deed of trust in West Virginia. There is therefore no personal estate of any kind applicable to the payment of any of the liens either in Pennsylvania or West Virginia, unless we, by judicial decree, convert into general personalty, applicable to all the unsecured debts of the assignor, the proceeds of the sale of the West Virginia real estate left after the payment of the first deed of trust. As the liens in West Virginia were more than sufficient to exhaust all the proceeds of the sale in that state, and the liens in Pennsylvania were more than sufficient to exhaust all the proceeds of the sales in that state, we are entirely at a loss to perceive how or upon what principle we can make such a decree. To us it is quite apparent that the present contest is confined to lien creditors alone, and it is merely a question between them whether one, or another, shall be permitted to come in on the fund.

Some question is made by the appellant as to whether the fund is within the jurisdiction of the Pennsylvania court, but the position taken, that the portion arising from the West Virginia sale is not, is entirely untenable. The whole fund is now in the hands of the accountant, and he is the assignee for the

benefit of creditors of the assignor, who is a citizen of Pennsylvania living in Washington county, and owning the lands in question, situate in both states. The assignee is a Pennsylvania official who must account, and who has accounted, to the Pennsylvania court, for the whole of the assignor's property. Moreover, in his account, as filed, he has charged himself with the whole proceeds of the land sold in West Virginia, and it is the distribution of that very money that must now be determined. Still further, he is the grantee in the second deed of trust, and he is both trustee and cestui que trust under that deed, because the judgments which it was given to protect are judgments owned by him. He has in his hands the very money which was realized under that deed of trust. If the judgments which that deed was intended to secure were the property of other persons than this assignee, it could not be questioned for a moment that it should be distributed to the owners of those judgments. It may well be that such distribution could be compelled by the courts of West Virginia, because the money, being the proceeds of land in that state, sold under judicial process there, would be properly distributable by the law and the courts of that state. But no such question arises here. There are no claimants to the fund under the law of West Virginia, and we are not informed that the result would be in any wise different if there were. But, this assignee is in the position of a lien creditor having recourse to two funds, and he is engaged in a contest with another lien creditor having access to one only of the same two funds. Strangely enough he does not desire to avail himself of his right of access as a lien creditor to the West Virginia part of the fund, but actually asks the courts in Pennsylvania to consider that part of the fund as general personal estate accessible to the whole body of the assignor's unsecured creditors, and this, although he would thereby cut out a lien creditor in Pennsylvania, who, if the true character of the fund is preserved, would be paid in full for his lien.

It is an anomalous position, and a strange proposition to advance, but the reason for it is discovered when we learn that the assignee had also guaranteed the payment of another judgment which was later in date than those of the appellees, and if he can succeed in getting the courts to hold that he is at

liberty to collect his money on his Pennsylvania judgments alone, which are prior to those of the appellees, he can obtain payment of the judgment posterior to those of the appellees, by treating the West Virginia part of the fund as general personal estate applicable to the payment of all unsecured debts. He thinks this would be equitable, although other lien creditors, who have just as much legal and equitable merit as he has, will thereby lose their money. We are quite unable to see it in that light. The appellees have the undoubted right prima facie to require the application of the West Virginia part of the fund to the payment of the judgments which were to be protected by the second deed of trust. That right must be enforced, unless it will interfere with the equity of the person against whom it is invoked. But he has no equity as a lien creditor against the equity of the appellees, and only claims that the doctrine should not be enforced, in order to enable him to come in with general unsecured creditors. To do this, the Virginia fund must be converted from its position as real assets applicable to the payment of West Virginia liens into personal assets applicable to all creditors alike. Why all unsecured creditors should be let in to defeat a lien creditor, it is impossible to see. Certainly they have no claim to postpone a lien creditor with a valid lien and an undoubted priority as to them. Yet the argument of the appellant is based upon no consideration that is not common to them all. There is neither equity, nor law, nor a sentiment of justice that can be offered in support of such a position.

The assignments of error are all dismissed.

Decree affirmed, and appeal dismissed at the cost of the appellants.